UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BRETT DANIELS and BRETT
DANIELS PRODUCTIONS, INC.,

    Plaintiffs,

v.                                                Case No. 15-CV-1334

SIMON PAINTER, TIMOTHY LAWSON,
INTERNATIONAL SPECIAL ATTRACTIONS,
LTD., TML ENTERPRISES, PTY, LTD.,
ASIA LIVE NETWORK, PTE, LTD., and
THE WORKS ENTERTAINMENT INC.,

    Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS, TO TRANSFER CASE TO CENTRAL DISTRICT OF CALIFORNIA, OR TO STAY ACTION PENDING ARBITRATION (DKT. NOS. 24, 27 AND 41), ORDERING CASE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA, AND DENYING AS MOOT MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFS (DKT. NO. 35), MOTION TO FILE A SUR-REPLY MEMORANDUM (DKT. NO. 38), AND MOTION ASKING THE COURT TO CONSIDER CERTAIN DEFENDANTS AS HAVING BEEN SERVED (DKT. NO. 40)**

---

    This case relates to contract disputes arising out of a traveling stage performance, and it is the first-filed of two federal cases involving this dispute and these parties. The plaintiffs in this case filed their complaint in the Eastern District of Wisconsin about one week before the defendants filed their complaint in the Central District of California, where the defendants seek an order compelling the parties to arbitrate their dispute.

    The defendants have filed several motions in the case here in Wisconsin: defendant Painter filed a motion to dismiss pursuant to Federal Rule of Civil

1

Procedure 12(b)(2), or in the alternative to transfer venue pursuant to 28 U.S.C. §1404(a) or to stay further proceedings pending the conclusion of the arbitration proceeding currently pending in Los Angeles, California. Dkt. No. 24. Defendant The Works Entertainment, Inc. filed a similar motion. Dkt. No. 27. After they appeared in the case, defendants Asia Live Network Pte Ltd., Timothy Lawson, and TML Enterprises, Pty, Ltd. filed a similar motion. Dkt. No. 41.

For the reasons explained in this decision and order, the court grants in part and denies in part the defendants' motions, and exercises its discretion to transfer this case to the Central District of California pursuant to §1404(a).

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Brett Daniels was a performer in a traveling stage production known as *The Illusionists*, a live magic show. Dkt. No. 19, ¶1. Brett Daniels Productions, Inc., is a corporation wholly owned by Mr. Daniels. Id., ¶7. The defendants are individuals and entities wholly owned by those individuals that were associated with the production of *The Illusionists*. Id., ¶¶22-33.

On November 9, 2015, the plaintiffs filed their complaint in this court, asserting eleven claims against the defendants, including breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, conversion, copyright infringement, and misappropriation of trade secrets; the complaint also sought declaratory relief. Dkt. No. 1. The plaintiffs filed an amended complaint on January 8, 2016. Dkt. No. 19. The

plaintiffs' allegations show that all of their claims arise out of or relate to the creation, production, and performance of *The Illusionists*.

In 2012, the parties allegedly entered into a series of contracts related to services that the plaintiffs and defendants were to provide in connection with *The Illusionists*. One set of such contracts, which the plaintiffs refer to as the "Performance Agreements," contains an arbitration clause, which provides in relevant part:

> In the event of any dispute or controversy arising out of or in any way in connection with the Agreement, such dispute or controversy shall be settled exclusively by arbitration in Los Angeles, California, in accordance with the arbitration rules of the American Arbitration Association or its successors then in effect.

E.g., Dkt. No. 16-1, at 2. At some point after the contracts were executed, a dispute arose which led to the plaintiffs ending their relationship with the defendants, apparently, in July 2013. Dkt. No. 19, ¶65. Now, over two years later, litigation has ensued in two federal districts, and a private arbitration has been initiated.

The defendants' motions ask the court to dismiss the amended complaint, or to transfer the case to the Central District of California, or to stay further proceedings pending arbitration. Dkt. Nos. 24, 27 and 41. The plaintiffs filed the case here in the Eastern District of Wisconsin on November 9, 2015. Dkt. No. 1. Four days later, on November 13, 2015, all but one the defendants in this case filed an arbitration demand with the American Arbitration Association in Los Angeles. Dkt. No. 15-1. Three days after that, all but two of the defendants in this case filed their own civil action in the Central District of

California, in which they pleaded a single claim for specific performance of the arbitration agreement. After the plaintiffs refused to proceed with the arbitration, the defendants asked the California court for an order compelling arbitration.

On February 9, 2016, the California court entered an order staying further proceedings in that case in light of the defendants' pending motions in this court. Painter v. Daniels, No. 15-8913-RSWL, Dkt. No. 29 (C.D. Cal. Feb. 2, 2016) (order staying action pending dismissal or resolution of the Wisconsin action). That court determined that both federal cases involve substantially similar parties and issues so, under the first-to-file rule, it would be prudent to allow this court to decide whether the first-filed case should proceed in this court before the California court took further action. In its order, the California court explained that it "is the proper forum for Plaintiffs to seek an order compelling arbitration in Los Angeles," decided not to transfer that case to this court "because Plaintiffs wish to arbitrate in the Central District of California, and the Wisconsin court cannot compel arbitration in Los Angeles," and declined to dismiss that case because of the possibility that this court might dismiss *this* case. Id. at 8, 12 n.8 (citing 9 U.S.C. §4).

## II. DISCUSSION

There appears to be no dispute that subject matter jurisdiction is proper in this court. The complaint alleges that the parties are completely diverse, and that the amount in controversy exceeds $75,000. The defendants did not contest these allegations. Instead, the defendants contended that three

4

separate grounds would support this court's decision not to allow the plaintiffs' claims to proceed in this particular court, at least until the conclusion of the arbitration the defendants filed in Los Angeles.

First, the defendants moved to dismiss this case under Rule 12(b)(2) for lack of personal jurisdiction. Second, they moved to transfer venue to the Central District of California pursuant to §1404(a). Third, they moved to stay further proceedings in Wisconsin pending the conclusion of the arbitration currently pending in the Central District of California. Having reviewed the parties submissions, the court concludes that it need not reach the 12(b)(2) issue, because even if all the defendants were subject to personal jurisdiction in this court (which is significantly unlikely, due to the lack of meaningful contacts the defendants have with Wisconsin), it is appropriate (and more efficient) for the court to exercise its discretion to transfer this case to the Central District of California under §1404(a).[1]

Section 1404(a) of Title 28 "allow[s] a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district." Research Automation, Inc. v. Schrader–Bridgeport Int'l,

---

[1] "Under 1404(a) . . . the transferring court need not have personal jurisdiction over the defendants" in order to transfer a case. Cote v. Wadel, 796 F.2d 981, 985 (1986). "When transferring an action under § 1404(a), the transferor court is not first required to establish personal jurisdiction over the movant." Van Gelder v. Taylor, 621 F. Supp. 613, 618 (N.D. Ill. 1985); see also Plastic Recovery Techs. V. Pearson, No. 11-cv-8995, 2012 WL 1021833, at *1 (N.D. Ill. Mar. 23, 2012) ("This court is not required to resolve the personal jurisdiction issue prior to a transfer."); Chestang v. Alcorn State Univ., 09-cv—3534, 2010 WL 1372601, at *2 (N.D. Ill. Apr. 1, 2010) (same); Broadcom Corp. v. Agere Sys., Inc., No. 04-cv-66, 2004 WL 1176168, at *2 (W.D. Wis. May 20, 2004) (same).

5

626 F.3d 973, 977 (7th Cir. 2010). The text of §1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all the parties have consented." Section 1404(a) "permits transfer to any district where venue is also proper (i.e., "where [the case] might have been brought") or to any other district to which the parties have agreed by contract or stipulation." Atl. Marine Const. Co. v. United States District Court, 134 S. Ct. 568, 581 (2013). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." Id. at 581. "Although a forum-selection clause does not render venue in a court "wrong" or "improper" within the meaning of § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)." Id. at 579.

The Seventh Circuit has explained that the Supreme Court treats arbitration provisions the same as forum selection provisions. Jackson v. Payday Fin., LLC, 764 F.3d 765, 780 n.39 (citing Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 630–31 (1985) (treating an arbitration clause in an international agreement as it would other "freely negotiated contractual choice-of-forum provisions"). Section 4 of the Federal Arbitration Act provides:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the

6

> parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4.

Ordinarily, a court presented with a motion to transfer under §1404 must give weight to the plaintiff's choice of forum, and consider whether various private interest factors support the moving party's request to transfer venue, such as "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." Atl. Marine, 134 S. Ct. at 581, n.6 (citation omitted). This case is different, because it involves a contractual arbitration clause providing for venue in a certain location.[2] When a motion to transfer is based on a forum selection or choice of forum clause, courts use a different inquiry from the standard §1404(a) analysis used when the parties disagree about the convenience of one forum versus another. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31-33 (1988); see also Atl. Marine, 134 S. Ct. at 581. A forum selection clause—as a private manifestation

---

[2] The defendants have not challenged venue in this district, so the court will not address that question. Even if the Eastern District of Wisconsin were the wrong venue, it would not change the result in this case, because transfer would be warranted under §1406(a). See Roberts & Schaefer Co. v. Clyde Bergemann Delta Docon, Inc., 14-cv-8841, 2015 WL 1911108, at *4 (N.D. Ill. Apr. 27, 2015) ("[I]f venue were proper in this district, the Court would transfer the case to [a different district] under § 1404(a); and if venue were improper, the Court would do the same under § 1406(a). As the result is transfer under both provisions, the Court need not decide which applies.").

7

of the parties' preferences on venue—weighs heavily in favor of transfer, and the public interest factors take priority. Atl. Marine, 134 S. Ct. at 575. As the Supreme Court stated in Atlantic Marine:

> The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways. First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted . . . . Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests . . . . As a consequence, a district court may consider arguments about public-interest factors only . . . . Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations.

Id. at 581-82 (internal citations omitted).

In this case, the Performance Agreements provide for exclusive arbitration in Los Angeles "of any dispute or controversy arising out of or in any way in connection with the Agreement . . . ." Dkt. No. 16-1, at 2. The defendants argue that all of the claims contained in the plaintiff's amended complaint arise out of or in connection with the Performance Agreements. In fact, the Statement of Claims that the defendants filed with their arbitration demand expressly states that "each of the eleven purported causes of action in the [Eastern District of Wisconsin] Complaint . . . fall within the arbitration provisions of the parties' written agreements . . . ." Dkt. No. 15-2, ¶2.

8

An arbitration clause covering claims arising "in connection with" a contract, like the clause at issue here, is very broad. "Every court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly" to cover all claims "having a significant relationship to the contract and all disputes having their origin or genesis in the contract." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999) (collecting cases). "To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Kiefer Specialty Flooring, Inc. v. Tarkett, Inc., 174 F.3d 907, 909 (7th Cir. 1999) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83 (1960)).

The plaintiffs argue that Atlantic Marine does not control the outcome of this case because the Performance Agreements contain the arbitration clause and the parties' disputes arise under other contracts—the Creator and Television Agreements—which do not contain arbitration clauses. Dkt. No. 31 at 31-33. The Creator and Television Agreements do not incorporate or integrate the terms of the Performance Agreements, so the plaintiffs contend that disputes arising under those contracts are not subject to the arbitration clause in the Performance Agreements. The defendants respond that the scope of the arbitration clause in the Performance Agreements is broad enough to encompass all of the parties' disputes.

9

After weighing all of the relevant §1404(a) public interest factors, the court finds that a transfer of this case to the Central District of California serves the public interest. Even if this court determined that all or part of the claims in this case arise "out of or in any way in connection with" the Performance Agreements and are subject to exclusive arbitration in Los Angeles, this court lacks authority to enter an order compelling arbitration there—or here. As the California court recognized, this court does not have authority to compel arbitration in Los Angeles—only the California court does. E.g., Faulkenberg v. CB Tax Franchise Sys., LP, 637 F.3d 801, 808 (7th Cir. 2011) ("a district court cannot compel arbitration outside the confines of its district."). The California court's opinion notes that "[t]he Ninth Circuit has explained that § 4 of the FAA does not require a party to file a petition to compel arbitration in the place where the contract specified that arbitration should occur." Painter v. Daniels, No. 15-8913-RSWL, Dkt. No. 29 at 7-8 (C.D. Cal. Feb. 2, 2016) (alteration omitted) (citation omitted). But this court cannot enter an order compelling arbitration of the parties' dispute in this district. As the Seventh Circuit held in Haber, "[w]hen an arbitration clause in a contract includes a forum selection clause, 'only the district court in that forum can issue a §4 order compelling arbitration. Otherwise, the clause of §4 mandating that the arbitration and the order to compel issue from the same district would be meaningless.'" Haber v. Biomet, Inc., 578 F.3d 553, 558 (7th Cir. 2009) (quoting Merrill Lynch, Pierce, Fenner & Smith v. Lauer, 49 F.3d 323, 327 (7th Cir. 1995)).

The plaintiffs challenge the scope of the arbitration clause and argue that The Works Entertainment cannot enforce it, which means that a court must determine the extent to which the claims in this case are subject to exclusive arbitration. This court finds that the California court is the better court to make that determination, because if it determines that the clause is enforceable, it has the ability to enter an order compelling arbitration in Los Angeles. Even if this court were to answer those questions, its opinion would be almost advisory, because *this* court could *not* enforce its decision through an order compelling arbitration.

The defendants argue that California law governs this case, which the plaintiffs did not contest. This also favors a transfer, because the California court is better suited to apply California law. See Atl. Marine, 134 S. Ct. at 582. Further, the plaintiffs did not argue that this case could not have been filed in the Central District of California, they did not move to dismiss the California action under Rule 12(b)(2) for lack of personal jurisdiction, and they did not (and likely could not) argue that venue is inappropriate in the Central District of California.

The court finds that transferring this case to the Central District of California will facilitate enforcement of the parties' arbitration clause, consistent with §4 of the FAA. A transfer to that court serves the interests of judicial economy, and the efficient administration of the court system, because the California court can determine whether and to what extent the parties'

11

disputes are subject to arbitration, and if appropriate, enter a corresponding order compelling arbitration.

### III. CONCLUSION

It serves the public interests of judicial economy and judicial administration to transfer this case to the Central District of California pursuant to 28 U.S.C. §1404(a), where a civil action involving these parties and this dispute already is pending, where personal jurisdiction is proper, and where the court has the authority to enter an order compelling arbitration in Los Angeles.

The court **GRANTS IN PART** the defendants' motions to transfer under §1404(a), **TRANSFERS** this civil action to the United States District Court for the Central District of California, and **DENIES AS MOOT** the remainder of the defendants' motions. Dkt. Nos. 24, 27, and 41. The court **DENIES AS MOOT** defendant Painter's pending motion for leave to file supplemental briefs (Dkt. No. 35), the plaintiffs' motion to file a sur-reply memorandum (Dkt. No. 38), and the plaintiffs' motion asking the court to consider defendants Timothy Lawson, TML Enterprises Pty, Ltd., and Asia Live Network Pty, Ltd. as having been served (Dkt. No. 40).

Dated in Milwaukee, Wisconsin this 27th day of May, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge